**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| FAIZAL ABDULLAHI, | : | Case No. 2:25-cv-37 |
| | : | |
| Petitioner, | : | |
| | : | Judge Algenon L. Marbley |
| vs. | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| WARDEN, SOUTHEASTERN | : | |
| CORRECTIONAL INSTITUTION | : | |
| | : | |
| Respondent. | : | |

---

**REPORT AND RECOMMENDATIONS**

---

Faizal Abdullahi, a state prisoner proceeding without counsel, has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. The matter is before the undersigned to consider the Petition (ECF No. 1), the Return of Writ (ECF No. 6), Abdullahi's Reply (ECF No. 7), and the state-court record. (ECF Nos. 5, 5-1) and issue a Report and Recommendation. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED.**

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On October 17, 2019, a Franklin County, Ohio grand jury indicted Abdullahi on one count of aggravated burglary, in violation of Ohio Revised Code Annotated ("O.R.C.") § 2911.11; one count of kidnapping, in violation of O.R.C. § 2905.01; one count of rape, in violation of O.R.C. § 2907.02; and one count of felonious assault, in violation of O.R.C. § 2903.11. (ECF No. 5 at PageID# 46-48). Abdullahi was tried by a jury in April 2021 and found guilty of kidnapping, attempted rape, and felonious assault. (ECF No. 5-1 at PageID# 875-877). The jury found Abdullahi not guilty of aggravated burglary and not guilty of rape. (*Id.*). The trial

court sentenced Abdullahi to a minimum of twelve years and a maximum of fifteen years imprisonment, and ordered him to register as a tier 3 sex offender. (*Id.* at PageID# 894-898).

## A. Direct Appeal

On July 16, 2021, Abdullahi filed a notice of appeal with the Tenth District Court of Appeals ("Court of Appeals"). (ECF No. 5 at PageID# 106-112). The Court of Appeals found that the following facts were adduced at trial:

> {¶3} At the trial beginning April 26, 2021, the trial court appointed interpreters for both Abdullahi and A.T. A.T., who is originally from Somalia but has lived in Columbus since 1999, testified that on October 7, 2019, she had been living at her third-floor apartment for about a month and one-half. A.T. testified she had been out at a family wedding until late at night and that when she returned home, she saw a man outside the entrance of her apartment. A.T. said she did not know the man but had seen him outside of her building before. When she approached the apartment complex, A.T. said the man initially blocked the entrance. She asked him to move but he refused, so A.T. said she stood outside and continued to ask him to move until she was able to get inside her apartment.

> {¶4} Once she was inside her apartment, A.T. said she was relaxing and watching YouTube when she fell asleep in her living room. She woke up to a knock at her door and, without opening the door, asked who was there. The person on the other side said he wanted water and asked A.T. to open the door. A.T. said she could smell alcohol through the door. A.T. also said she did not open the door but ignored the man and went back to the living room. When she returned to the living room, A.T. said she fell asleep again. Approximately an hour and one-half later, A.T. said she heard more loud banging at the door. The man at the door kept saying he wanted water, and A.T. testified the man spoke to her in Somali and referred to her as his sister, asking her to help him. A.T. said she told the man to leave, or she would call the police.

> {¶5} After a period of silence, A.T. testified she thought the man left and she decided to check her door to be sure it was locked. A.T. said she opened the door slightly and when she did that, the man put his arms through the doorway and grabbed her wrists. According to A.T.'s testimony, the man then forced his way into the apartment, shut and locked the door, pulled her hair, and threw her on the ground. While she was on the ground, A.T. said the man grabbed her throat with both of his hands and squeezed, causing her to feel like her "head was going to pop" and making it "painful to breathe." A.T. said the man released the pressure briefly and then choked her a second time, this time applying more pressure that caused her vision to slowly fade to black. She compared the sensation to feeling like she was drowning.

{¶6} A.T. further testified that while the man had her pinned to the ground, he removed all of his clothes and flipped her over so that her stomach was on the ground. A.T. said the man tried to rip her dress off but could not get it to come off so he pulled it all the way up to her shoulders. At that point, A.T. said the man got on top of her and his penis was touching her butt with skin-to-skin contact. A.T. testified the man was moving back and forth and that his penis was going up and down on her buttocks. The prosecutor asked A.T. detailed questions about this portion of the incident, and the following exchange occurred:

Q. Was his penis ever between your butt cheeks?
A  It was in the outer part, yes.
Q. Did you ever feel his penis inserted into your anus?
A  No.
Q. Did you feel his penis in between your butt cheeks?
A  I would say the outer but not - - because I was clenching my butt. I was closing my legs as tight as I can because I didn't want that happening to me.
Q. Just to clarify, [A.T.], why were you clenching your butt?
A  Because I didn't want his penis to go inside.
Q. Did you remain on your stomach during this incident?
A  Shortly.
Q. What happened after he tried to insert his penis into your anus?
A  He flipped me. Now I was in my back position, and he tried to - - it was a struggle. It was a struggle because I was closing both my legs tight. He wanted to put his penis, put his penis in my vagina.
Q. Did he?
A  No.
Q. How come?
A  Because I was fighting him. And he was a lot stronger than me.
Q. Throughout this struggle, am I correct in understanding you, when you said you were trying very hard to keep your legs and your buttocks closed, and during that was he still on top of you?
A  Yes, he was.

When asked again about where she specifically felt the man's penis, A.T. testified she felt the man's penis inside her butt cheeks but not inside her anus. A.T. said the man then strangled her a third time, and she again felt like she could not breathe, could not speak, and her vision turned blurry with black checkers. She felt like she was close to passing out but did not lose consciousness. While he was attacking her, A.T. said the man told her his name was Faizal.

{¶7} A.T. testified she was eventually able to break free from the man's grasp by pleading to use the restroom and that when she broke free from his hands, she ran into her kitchen and started smashing dishes on the floor in the hopes a neighbor would hear the commotion. When the man ran toward her in the kitchen, A.T. said

3

she grabbed a knife, but the man told her "[g]o ahead and kill me." A.T. said the man then grabbed a kitchen pot and threw it toward her, just missing her head and landing on the kitchen counter. A.T. then started screaming hoping someone would hear her. According to her testimony, the man then slowly started to get dressed while she continued to yell and scream even though using her voice was painful after being choked, and he eventually left her apartment. She described the man as being dark skinned, approximately five feet eight inches tall, with a scar on his cheek and missing several teeth. A.T. made an in-court identification of Abdullahi as the man who attacked her.

{¶8} After the man left her apartment, A.T. said she called 911. The state played a recording of the 911 call for the jury. When police arrived, A.T. said she asked for medical attention and was taken to the hospital for examination. Once at the hospital, A.T. said she was evaluated by a forensic nurse but that she refused to consent to a physical exam because she was scared. A.T. also testified she was not sure if she had been raped because she was engaged in a struggle with the man the whole time he was on top of her. When asked to explain what she meant, AT. said she was closing her legs tightly the whole time but that "when he flipped me, when I was [on] my stomach facing down on the floor I did feel his penis. He was going up and down but not to the point where it went fully inside." A.T. said she gave the forensic nurse the dress she had been wearing during the attack.

{¶9} A.T. testified the exam took most of the day and that she did not return to her apartment until close to 11:00 p.m. When she returned to her apartment with her parents and her brother, who had driven from Cleveland to be with her, A.T. said she saw the man who attacked her outside her apartment complex again. A.T. told her family that was the man who had attacked her, and then she called police.

{¶10} Mary Hogue, a patrol officer with the Columbus Division of Police who responded to the dispatch of a reported sexual assault, described A.T. as being in distress, crying, and having difficulty speaking. Officer Hogue said A.T. told her that a man had been in the apartment hallway who appeared to be intoxicated and had asked A.T. for water but A.T. did not give him anything and went inside her apartment. A.T. told Officer Hogue she had seen the man loitering around the apartment complex before but that she did not have a personal relationship with him. Officer Hogue did not notice any visible injuries on A.T., but testified that A.T. was grasping her neck and indicating to Officer Hogue that her attacker choked her three times and she was in pain. Medics arrived on the scene and Officer Hogue rode with A.T. to Saint Ann's hospital for evaluation. Officer Hogue was wearing a body camera during her interaction with A.T. and the state played the body camera footage for the jury.

{¶11} Molly Downs, a sexual assault nurse examiner ("SANE"), testified she examined A.T. at the hospital on October 7, 2019, and documented her injuries. In her report from the SANE exam, Downs described A.T. as withdrawn, tired, and having difficulty making basic decisions. Downs testified that A.T. reported that a

4

man named Faizal had forced his way into her home, physically assaulted her, and attempted to sexually assault her, though she said A.T. had difficulty remembering the details of the events, something Downs described as a common experience for someone who has experienced trauma. Downs testified she observed a bite injury to the corner of A.T.'s mouth, a bruised and swollen area on her forehead, and an area on her neck that A.T. had reported as having experienced strangulation. Additionally, Downs noticed that A.T. had difficulty projecting her voice, and AT. reported she had a sore throat, and it was difficult for her to swallow. When asked if any vaginal or anal penetration occurred, A.T. responded that she was unsure. Downs said A.T. declined to undergo a genital exam.

{¶12} Law enforcement officers collected DNA samples from A.T.'s neck and from a pot handle at A.T.'s residence. Subsequent laboratory testing identified Abdullahi as the contributor of those DNA samples.

{¶13} At the close of the state's evidence, defense counsel made a Crim.R. 29 motion for acquittal relative to the rape count. Defense counsel argued that because A.T. testified there was no anal or vaginal penetration, the state failed to put forth evidence on all the elements of rape. The trial court responded it did not recall A.T.'s testimony with respect to penetration being so definitive and that her testimony could be interpreted in different ways, noting that the definition of intercourse within the meaning of sexual conduct for purposes of a charge of rape includes penetration no matter how slight. The trial court further noted that A.T.'s description of the struggle seemed to leave her unsure of whether or to what extent penetration occurred, and, for that reason, determined that the question of whether vaginal or anal penetration occurred is a question for the trier of fact to determine. Thus, the trial court denied the Crim.R. 29 motion.

{¶14} After the state rested, defense counsel called two witnesses: Abdullahi and one of his friends. Sadi Ismali Gurhan, a friend of Abdullahi, testified that he had seen Abdullahi interact with A.T. before and that A.T. and Abdullahi were not strangers to each other. Gurhan described seeing Abdullahi help A.T. carry groceries to her apartment on a previous occasion. He also testified that he was with Abdullahi on a separate occasion when A.T. came outside and invited Abdullahi to come to her apartment for a meal. Gurhan also described a third meeting he saw between Abdullahi and A.T., testifying that he once waited 30 minutes for Abdullahi to return from A.T.'s apartment while Abdullahi and A.T. had tea.

{¶15} Abdullahi also testified. Abdullahi was born in Somalia in 1983, spent 18 years in Kenya as a refugee, and then moved to the United States in 2009 with his wife and children. Abdullahi testified he is now separated from his wife, and acknowledged he had prior convictions, also occurring in 2019, for domestic violence and trespass into a habitation.

{¶16} In his testimony, Abdullahi stated A.T. was not being truthful when she told law enforcement and the jury that she did not know Abdullahi prior to October 7,

5

2019. Abdullahi said he spent a month and one-half talking to A.T. and developed a relationship with her. He said A.T. was lying when she said he had never been inside her apartment prior to October 7, 2019, and that she had invited him over previously for lunch and for tea.

{¶17} With respect to the events of October 7, 2019, Abdullahi said he was sitting outside the apartment complex with his friend when A.T. returned to the apartment complex around 2:00 a.m. and invited him to come to her apartment. Abdullahi testified that A.T. let him into the apartment and he sat down on her mattress to talk to her. According to his testimony, Abdullahi had never told A.T. that he was married or that he had children, and he said that on October 7, 2019, A.T. confronted him about having a family. He said A.T. became upset and accused him of deceiving her, and he said she then started throwing plates on the floor. Abdullahi said he tried to leave the apartment but that A.T. quickly came up behind him with a cooking pot and hit him in the face, so he said he then tried to grab her wrists and put his hand on her neck to try to push A.T. away from him. Abdullahi said he scratched A.T.'s neck while trying to push her away from him but that he was not trying to hurt her. Additionally, Abdullahi said he was never undressed while in A.T.'s apartment except for taking off his sweatshirt. He also denied rubbing his penis on A.T.'s backside and in between her butt cheeks.

*State v. Abdullahi*, 2024-Ohio-418, ¶¶ 3-17, 235 N.E.3d 987, 990;(ECF No. 20-1 at PageID# 211-216).

Brenson's brief to the Court of Appeals (*id.* at PageID# 331-389) raised four assignments of error:

(1) The trial court erred by denying the Defendant's Rule 29 Motion and failing to dismiss Count 3 (Rape) because there was no evidence of "sexual conduct" or penetration.

(2) Mr. Abdullahi was deprived of a fair trial due to prosecutorial misconduct through misstatements of testimony and law in closing arguments.

(3) Mr. Abdullahi was deprived of effective assistance of counsel: (a) Failure to renew Defendant's Rule 29 Motion at the close of Defense's case, (b) Failure to object to the prosecutor's misstatements of fact and law in closings, (c) Failure to object to the Attempted Rape jury instruction, and (d) The totality of trial counsel's performance.

(4) The trial court committed plain error in imposing an indefinite sentence under R.C. 2967.271, the Reagan Tokes Law, because it violates the United States and Ohio Constitution.

(*Id.* at PageID# 114-115).

On February 6, 2024, the Court of Appeals issued a decision affirming the conviction and sentence. (*Id.* at PageID# 210-230). There is no indication in the record that Abdullahi appealed to the Ohio Supreme Court.

## B. Application to Reopen Direct Appeal

About seven months after the conclusion of his direct appeal, on September 5, 2024, Abdullahi filed a Motion for a Delayed Rule 26(B) Application to Reopen his direct appeal proceedings ("Application to Reopen"). (*Id.* at PageID# 231-242). Abdullahi raised two claims:

(1) The appellate counsel fail[ed] to challenge the Allen Charge given by the trial judge during a deadlock situation.

(2) The appellate counsel was ineffective for failing to raise a violation of Abdullahi's right to a speedy trial under the Sixth Amendment to the U.S. Constitution and the Ohio Const.., Article I, Section 10.

(*Id.* at PageID# 232-233). On December 10, 2024, the Court of Appeals denied Abdullahi's motion, finding that he failed to meet the 90-day filing requirement in Ohio App. R. 26(B)(1) and failed to establish good cause because he did not sufficiently explain how his lack of access to an interpreter prevented a timely filing. (*Id.* at PageID# 252-257). Abdullahi appealed the decision to the Ohio Supreme Court (*id.* at PageID# 258-282), but it declined jurisdiction. (*Id.* at PageID# 283).

## II.    Federal Habeas Proceedings

On January 15, 2025, Abdullahi filed the instant federal habeas petition. (ECF No. 1). He asserts four grounds for relief:

**GROUND ONE**:    The trial judge was bias[ed] against the defendant when [he] denied Rule 29 motion and helped the state to develop unindicted charge.

7

**Supporting Facts:**     At the close of the state's case, defendant raise[ed] a Rule 29 motion because the state fail[ed] to prove beyond a reasonable doubt that Abdullahi commit[ed] rape as charged. The trial judge denied and suggested it's arguable that the defendant attempted to commit rape. On the fifth day of trial, the state added an unindicted attempt[ed] rape charge. Abdullahi was convicted of attempt[ed] rape as suggested by the trial judge.

**GROUND TWO:**     Ineffective assistance of counsel.

**Supporting Facts:**     The totality of trial counsel's performance was deficient due to failure to object to multiple issues which deprived the defendant's right to a fair trial and violations of Fifth and Six Amendments to due process and confrontation: (a) failure to object [to] court's improper handling of jury questions, (b) failure to renew Rule 29 motion at the close of argument, (c) failure to object [to] coercive supplemental jury instructions, (d) failure to object [to] attempted rape jury instruction.

**GROUND THREE:**     Appellate counsel fail[ed] to raise a violation of speedy trial right under the Sixth Amendment to the U.S. Const[itution] and [Ohio] constitution, Art. I, Section 10.

**Supporting Facts:**     After 14 month[s] under state incarceration the prosecutor assign[ed] to the case drop the trial date was December 7, 2020. Two [new] prosecutors [were] assigned to the case it take five more month[s] to the next trial date. Abdullahi was prejudiced of fair trial by these two assistance prosecutorial misconduct.

**GROUND FOUR:**     The trial court violated the defendant's Fifth Amendment due process clause and the Sixth Amendment confrontation clause**.**

**Supporting Facts:**     The jury had deadlock situation and sent 2 notes, the judge answer the notes without the defendant's awareness. Then the next day the jury had a third deadlock and sent another note. The judge brings in the jury and delivered a coercive supplemental instruction without consulting the defendant's counsel about the language of the supplemental instruction and sent the jury to deliberate. The judge then put them on the record question from the jury defendant was not aware.

(ECF No. 1 at PageID# 6-11).

8

On March 20, 2025, Respondent filed a Return of Writ. (ECF No. 6). Respondent contends that the grounds for relief are either unexhausted or procedurally defaulted. (*Id.* at PageID# 919-925). Abdullahi argues that his claims are not unexhausted or procedurally defaulted because he appealed his Application to Reopen to the Ohio Supreme Court and raised all claims during the state court proceedings. (ECF No. 7).

### III.    PROCEDURAL DEFAULT

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991), *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects

of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court. As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case – that is, they are "procedurally defaulted." It is well settled that "[a] common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit apply a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard). First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. Finally, if the court determines that a state procedural rule was not complied with and the rule has an adequate and independent state ground, then the petitioner may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he or she was actually prejudiced by the alleged constitutional error. *Maupin*, 785 F.2d at 138. To establish cause, a petitioner must show that "some objective factor external to the defense" impeded the

10

petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The petitioner bears the burden of showing cause and prejudice. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001).

In this action, Respondent argues that the following claims are unexhausted because Abdullahi raised them in his direct appeal, but failed to appeal the Court of Appeals' decision to the Ohio Supreme Court:

> Ground One, which alleges the trial judge was biased when he denied the Rule 29 motion,
>
> Ground Two (b), which alleges ineffective assistance of counsel for failure to renew Rule 29 motion at the close of argument, and
>
> Ground Two (d), which alleges ineffective assistance of counsel for failure to object [to] attempted rape jury instruction.

(ECF No. 6 at PageID# 919-922). Respondent argues that, although Abdullahi technically can request a delayed appeal to the Ohio Supreme Court to exhaust these claims, the Court should not stay these proceedings to permit him to do so and alternatively, should find that the claims are procedurally defaulted because a delayed appeal is unlikely to be granted.

The record reflects that Abdullahi raised Grounds One, Two (b), and Two (d) in his direct appeal but that failed to appeal the Court of Appeals' adverse decision to the Ohio Supreme Court, the highest state court with authority to hear these claims. Consequently, these three claims are unexhausted. Because a delayed appeal is still available, the undersigned declines to declare the claims procedurally defaulted. Where, as here, a habeas petition contains both unexhausted and exhausted claims ("mixed petition"), the district court has four options:

> (1) dismiss the whole mixed petition,
>
> (2) stay the case while the petitioner exhausts the unexhausted claims in state court,

11

(3) permit the petitioner to dismiss the unexhausted claims and then address with the exhausted claims, or

(4) ignore the exhaustion requirement altogether and deny the petition on the merits if all the claims lack merit.

*See Harris v. Lafler*, 553 F.3d 1028, 1031–32 (6th Cir. 2009) (internal citations omitted). Because Petitioner's claims lack merit, the undersigned opts to proceed under the fourth option.

Respondent next argues that the remaining subparts of Grounds Two and Four are procedurally defaulted because they were not raised in Abdullahi's direct appeal. (ECF No. 6 at PageID# 924). Respondent also argues that the inclusion of these claims in Abdullahi's Motion for Delayed Reopening of his direct appeal was insufficient to avoid procedural default. (*Id.*). The undersigned agrees.

In his Motion for a Delayed Application for Reopening, Abdullahi contends that his appellate counsel was ineffective for failing to challenge the *Allen*[1] charge that the judge gave to the jury after being advised the jury was deadlocked. (ECF No. 5 at PageID# 232-233). These claims are analogous to Ground Two (a), which alleges that trial counsel was ineffective for failing to object to court's improper handling of jury questions; Ground Two (c), which alleges that trial counsel was ineffective for failing to object to coercive supplemental jury instructions; and Ground Four, which alleges the trial court erred in its response to the jury notes.[2] (ECF No. 1 at PageID# 8, 11). Abdullahi's assertion of these claims in a Rule 26(B) Application, however, is insufficient to preserve these claims for federal habeas review. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012) ("Wogenstahl's Rule 26(B) motions preserved for habeas review

---

[1] *Allen v. United States*, 164 U.S. 492 (1896).
[2] Two of the three jury notes concerned the jury's inability to reach a verdict. (ECF No. 5 at PageID# 101-102).

12

only his [ineffective assistance of appellate counsel] arguments, not the underlying substantive arguments.").

Finally, Respondent asserts that notwithstanding the fact that Ground Three alleges that appellate counsel was ineffective for failing to raise a speedy trial claim, Ground Three is procedurally defaulted because the Court of Appeals dismissed Abdullahi's Application to Reopen as untimely. (ECF No. 6 at PageID# 925). The undersigned agrees. Ohio's timeliness requirements constitute an independent and adequate state ground for declining to review the merits of a petitioner's claims. *See Parker v. Bagley*, 543 F.3d 859, 862 (6th Cir. 2008) ("[T]he untimeliness of Parker's application to reopen was an adequate and independent state procedural ground for the Ohio courts' denial of the application . . . . [P]rocedural default . . . foreclose[d] habeas relief on his claim for ineffective assistance of appellate counsel.").

To the extent Abdullahi's Reply could be interpreted to argue that he has met the requirements for "cause and prejudice" because his appellate counsel was ineffective for failing to include the defaulted claims in his direct appeal, that argument lacks merit. As set forth above, Abdullahi's ineffective assistance of appellate counsel claim is procedurally defaulted, and a procedurally defaulted claim cannot serve as "cause and prejudice." *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000).

Accordingly, all four claims in Abdullahi's federal habeas petition are either unexhausted or procedurally defaulted. The procedurally defaulted claims must be dismissed. And, for the reasons discussed below, Abdullahi's unexhausted claims must be dismissed because they lack merit.

**IV.** **MERITS REVIEW OF UNEXAUSTED CLAIMS (Grounds One, Two (b), and Two (d))**

As it relates to his unexhausted claims, Abdullahi fails to establish a viable substantial constitutional claim. *See Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008), *as amended* (July 7, 2008).

This Court's review of Brenson's petition is guided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The United States Supreme Court describes AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

AEDPA limits federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state-court decision either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The United States Court of Appeals for the Sixth Circuit has explained the meaning of the standards set forth in § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ "if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the law or bases its decision on an unreasonable determination of the facts, in light of the record before the state court. *Harrington v. Richter*, 562 U.S. 86, 100, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); *Williams*, 529 U.S. at 412–13, 120 S.Ct. 1495.

*Lang v. Bobby*, 889 F.3d 803, 810 (6th Cir. 2018).

Moreover, under § 2254(d)(2), a state court's factual determination is not "unreasonable" merely because the federal habeas court would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Instead, a state court's factual findings are "only unreasonable where they are 'rebutted by clear and convincing evidence' and do not have support in the record." *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (quoting *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted). And "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]" *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

The burden of satisfying AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

15

### A. Ground One

In Ground One, Abdullahi contends that the trial judge's denial of his Rule 29 motion for a judgment of acquittal on the rape charge demonstrated bias.

At the close of the state's case, Abdullahi's trial counsel argued that the rape charge should be dismissed because there was no evidence that penetration or intercourse occurred. (ECF No. 5-1 at 685-686). The trial court denied the motion:

> At this time, I'm going to leave it as a factual question for the trier of fact that there is at least evidence in the record that -- I think she testified that, my words, not her words, but moving back and forth, that he was moving back and forth, which arguably could be at least attempt at intercourse. And then the question for the trier of fact is going to be whether or not her testimony was sufficient to indicate insertion, however slight. So, at this time, the Court is going to overrule the Rule 29 motion.

(*Id.* at PageID# 689).

The Court of Appeals agreed with the trial court that there was sufficient evidence of sexual contact to deny the motion:

> {¶24} Here, Abdullahi argues the state failed to present any evidence of penetration and, accordingly, the trial court should have granted the Crim.R. 29 motion for acquittal on the rape charge. Abdullahi points to A.T.'s testimony that, although she felt Abdullahi's penis in between her butt cheeks, she did not feel his penis inside her anus. The state responds that A.T. also testified that the reason she did not consent to a physical examination at the hospital was because she "didn't think [she] got raped," meaning "[she] did feel his penis. He was going up and down but not the point where it went fully inside." The state notes that the statutory definition of sexual conduct requires penetration "however slight," and that, viewing A.T.'s testimony in a light most favorable to the state, there was sufficient evidence that penetration, however slight, occurred and, thus, sexual conduct occurred. R.C. 2907.01(A).
>
> {¶25} Having reviewed the record, we agree with the trial court that the state presented sufficient evidence of sexual conduct related to the rape charge to overcome Abdullahi's Crim.R. 29 motion for acquittal. Although A.T. testified at various times she felt Abdullahi's penis on the outer part of her buttocks and in between her butt cheeks but not inside her anus, she also testified that the reason she did not believe she was raped was because she did not feel full penetration of Abdullahi's penis. AT. described an extensive struggle and her repeated efforts to

16

fight Abdullahi off of her, and she testified that he continued to move his penis up and down while holding her down. Additionally, on the medical form the SANE nurse completed during A.T.'s time at the hospital, A.T. answered she was "[u]nsure" whether vaginal or anal penetration had occurred, and the SANE nurse testified she had explained to A.T. that for purposes of the form, "penetration meant full insertion of the penis into the vagina or anal cavity," which is different from "penetration, however slight" required for the statutory definition of sexual conduct.

{¶26} From all of this testimony, we agree with the trial court that the question of whether penetration, however slight, had occurred was a question for the trier of fact. The testimony related to A.T.'s understanding of what constituted penetration undercuts Abdullahi's assertion that A.T. was unequivocal that no penetration occurred. Accordingly, the trial court did not err in denying Abdullahi's Crim.R. 29 motion for acquittal.

(ECF No. 5-1 at PageID# 218-219).

As a general matter, this Court lacks habeas jurisdiction to consider any arguments challenging the trial court's denial of Abdullahi's Motion for Acquittal under Ohio Crim. R. 29 in the absence of an alleged due process violation. This is because habeas jurisdiction extends only to claims challenging the legality of a petitioner's custody based on a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). *See also Smith v. Bobby*, No. 5:04-CV2353, 2005 WL 2076667, at *24 (N.D. Ohio Aug. 25, 2005), *report and recommendation adopted*, No. 504-CV-2353, 2007 WL 2427999 (N.D. Ohio Aug. 21, 2007) ("The decision whether to grant a motion for acquittal pursuant to Ohio Crim. R. 29 is a matter of state law and is cognizable in habeas only if the denial of such a motion is a violation of due process."); *Small v. Warden*, No. 2012 WL 3745834, at *4 *report and recommendation adopted*, *No.* 2:12-CV-0958, 2013 WL 9894270 (S.D. Ohio Aug. 19, 2013) ("Petitioner's claim, as it relates to the trial court's denial of his motion for judgment of acquittal pursuant to Ohio Crim. R. 29 presents an issue of state law that cannot be reviewed in federal habeas corpus.").

17

Abudullahi's argument that the record contains insufficient evidence to convict him of rape in an effort to demonstrate a violation of his due process rights is unpersuasive. In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court held that because the Due Process Clause requires the State to prove beyond a reasonable doubt every fact necessary to constitute the charged offense, "the relevant question" in assessing the sufficiency of the evidence "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). Under the *Jackson* standard, the State need not rule out every hypothesis except that of guilt beyond a reasonable doubt. *Id.* at 326. Rather, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983). The trier of fact must resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences. *Jackson*, 443 U.S. at 319. As relevant here, the reviewing court cannot reweigh the evidence, reevaluate the credibility of witnesses, make subjective determinations of guilt or innocence, or otherwise substitute its opinion for that of the jury. *See id.* at 318–19 & n.13; *see also United States v. Fisher*, 648 F.3d 442, 450 (6th Cir. 2011) (*citing Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Moreover, federal habeas review of a claim challenging the sufficiency of the evidence is even further limited. As the Sixth Circuit explained in *Brown*, the federal habeas court is "bound by two layers of deference to groups who might view facts differently than [the habeas court] would." 567 F.3d at 205. The federal habeas court must defer not only to the trier of fact's findings as required by *Jackson*, but under 28 U.S.C. § 2254(d), must also "defer to the *state*

18

*appellate court's* sufficiency determination as long as it is not unreasonable." *Id.* (emphasis in original); *see also Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011). The Sixth Circuit went on to emphasize in *Brown*:

> [W]e cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt. We cannot even inquire whether *any* rational trier of fact would conclude that petitioner...is guilty of the offenses for which he was charged. Instead, we must determine whether the Ohio Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial.

567 F.3d at 205 (emphasis in original).

Here, Abdullahi repeats the argument he advanced on direct appeal: "the state fail[ed] to prove beyond a reasonable doubt that Abdullahi commit[ed] rape as charged." (ECF No. 1 at PageID# 6). Abdullahi's argument that the trial court improperly submitted the "unindicted" charge of attempted rape to the jury is unavailing. *See* O.R.C. § 2945.74 ("The jury may find the defendant not guilty of the offense charged, but guilty of an attempt to commit it if such attempt is an offense at law…"). The Court of Appeals found that A.T.'s testimony about her encounter with Abdullahi constituted "sufficient evidence of sexual conduct related to the rape charge" (ECF No. 5 at PageID# 219). Applying *Jackson*, this Court must defer to the Court of Appeals' reasonable determination that "there was sufficient evidence that penetration, however slight, occurred and, thus, sexual conduct occurred." (*Id.* at PageID# 218). The Court must also defer to the Court of Appeals' conclusion that, as a matter of Ohio law, A.T.'s testimony was sufficient to satisfy the definition of "sexual conduct." *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Put simply, this Court cannot re-interpret the evidence where the Court of Appeals reasonably found the evidence to be sufficient. *Brown*, 567 F.3d at 205.

19

Because Abdullahi has failed to demonstrate that the Court of Appeals' adjudication of Ground One was contrary to, or an unreasonable application of federal law, it lacks merit and must be dismissed.

### B.  Ground Two (b)

In Ground Two (b), Abdullahi asserts that his trial counsel was ineffective for failing to renew his Ohio Crim. R. 29 Motion for Acquittal at the close of the defense case. (ECF No. 1 at PageID# 8).

In all criminal prosecutions, the Sixth Amendment affords "the accused . . . the right . . . to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to 'effective assistance of counsel' serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted). The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish ineffective assistance, a defendant must show both deficient performance and prejudice. *Berghuis v. Thompkins*, 560 U.S. 370, 389 (2010). As to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689.

As to the second prong, the Supreme Court held: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

When an exhausted claim of ineffective assistance of trial counsel is raised in a federal habeas petition, review under AEDPA is "doubly deferential." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). That is, "*Strickland* requires deference to counsel and AEDPA requires deference to the state court." *Moody v. Parris*, No. 20-5299, 2022 WL 3788503, at *4 (6th Cir. Aug. 30, 2022). The question then is not whether trial counsel was ineffective, but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. The Supreme Court clarified the double deference that is due:

> This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal citation omitted).

Here, the Court of Appeals concluded that Abdullahi's trial counsel's performance was not ineffective. (ECF No. 5 at PageID# 224-225). Specifically, the Court of Appeals found that Abdullahi's Ohio Crim. R. 29 Motion for Acquittal lacked merit and any attempt to renew that motion at the close of the defense's case would have been futile. (*Id.*). The Court of Appeals explained that Abdullahi identified no evidence that was presented during the defense case that

21

would have supported Abdullahi's previously-denied Motion for Acquittal. (*Id.* at PageID# 225).

Because Abdullahi fails to identify any prejudice in his habeas petition, he is unable to

demonstrate that the Court of Appeals' decision is contrary to, or an unreasonable application of

*Strickland*. Accordingly, Ground Two (b) lacks merit and must be dismissed.

### C. Ground Two (d)

In Ground Two (d), Abdullahi contends, without elaboration, that his trial counsel was

ineffective for failing to object to the attempted rape jury instruction. (ECF No. 1 at 8).

The Court of Appeals dismissed Abdullahi's similar claim on direct appeal:

{¶45} A trial court "must give an instruction on a lesser included offense if under any reasonable view of the evidence it is possible for the trier of fact to find the defendant not guilty of the greater offense and guilty of the lesser offense." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, ¶ 34; *State v. Rutledge*, 10th Dist. No. 17AP-590, 2019-Ohio-3460, ¶24 ("an instruction on a lesser-included offense is required only when the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction on the lesser-included offense"). Here, Abdullahi does not argue the evidence did not support an attempted rape instruction, and a review of the record indicates the evidence at trial warranted the instruction. Despite the evidentiary support for the instruction, Abdullahi again argues the trial court should have granted his Crim.R. 29 motion on the rape charge which would have prevented the state from seeking an instruction on a lesser-included offense. Having already determined the trial court did not err in denying the Crim.R. 29 motion on the rape charge, and because the evidence presented at trial warranted the attempted rape instruction, Abdullahi cannot show a reasonable probability of success if his trial counsel had objected to the attempted rape instruction. Thus, trial counsel's failure to object to the attempted rape instruction does not constitute deficient performance within the meaning of the *Strickland* test.

(ECF No. 5 at PageID# 225-226).

It appears that Abdullahi's argument in his Petition is that his counsel rendered

ineffective assistance because the evidence adduced was insufficient to support an instruction on

the lesser included offense of attempted rape. The Court of Appeals, however, reached the

contrary conclusion, finding that the evidence supported the instruction and that Abdullahi could

not demonstrate that he was prejudiced by his counsel's failure to object. (*Id.*). Abdullahi has

failed to offer any argument or evidence upon with this Court could rely upon to conclude that the Court of Appeals' decision was contrary to, or an unreasonable application of law. *Cf. Bradshaw*, 546 U.S. at 76.  Ground Two (d) therefore lacks merit and must be dismissed.

## V.        CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Abdullahi's habeas petition be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE.**

It is further **RECOMMENDED** that the Court decline to issue a certificate of appealability because petitioner has not stated a "valid claim of the denial of a constitutional right" or presented an issue that is "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

Finally, it is **RECOMMENDED** that the Court **DENY** Petitioner leave to appeal *in forma pauperis*, even upon a showing of financial necessity, and **CERTIFY** pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith." *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997).

<u>**PROCEDURE ON OBJECTIONS**</u>

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in

part, the findings or recommendations made herein, may receive further evidence, or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo* and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

**IT IS SO RECOMMENDED**.


/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

24